865 F.2d 1261
 28 ERC 1649, 19 Envtl. L. Rep. 20,857
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
T & S BRASS AND BRONZE WORKS, INC., Defendant-Appellant.
 No. 88-3531.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 4, 1988.
Decided: Dec. 22, 1988.
 
 Roger Florio (Eric C. Schweitzer, Ogletree, Deakins, Nash, Smoak and Stewart, on brief), for appellant.
 Sarah Penelope Robinson (Roger J. Marzulla, Assistant Attorney General; Martin W. Matzen, Phillip A. Brooks, Department of Justice; Robert James, Charles Desaillan, U.S. Environmental Protection Agency, on brief), for appellee.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, HARRISON L. WINTER, Chief Judge, and MURNAGHAN, Circuit Judge.
 PER CURIAM:
 
 
 1
 The T & S Brass and Bronze Works, Inc., in litigation with the Environmental Protection Agency ("EPA") of the United States, was found not to have complied with the applicable provisions of the Resource Conservation and Recovery Act, 42 U.S.C. Sec. 6901, et seq. (the "RCRA" or the "Act"), and was fined $1,000 a day, a total of $194,000. T & S Brass was also enjoined from future violations of the Act, although it had at last corrected the violations involved as of May 21, 1986. The court in its discretion regarded such injunctive relief as prudent in the circumstances to insure future adherence to applicable regulations.
 
 
 2
 T & S Brass raised a plethora of claims of error asserting that:
 
 
 3
 1. The district court erred in finding that T & S Brass was treating, storing or disposing of a hazardous waste in its surface impoundment as of November 8, 1985.
 
 
 4
 2. The hazardous waste "F006" describes only wastewater sludges formed through an intentional precipitation as opposed to inadvertent settling.
 
 
 5
 3. The government failed to establish that F006 was present in the surface impoundment as of November 8, 1985.
 
 
 6
 4. There was error in finding that the surface impoundment operated by T & S Brass was a land disposal facility subject to federal regulation under Sec. 3005 of the RCRA, 42 U.S.C. Sec. 6295.
 
 
 7
 5. The $194,000 penalty, given the facts established at trial, was excessive.
 
 
 8
 6. The district court failed to address the relevant policy considerations in assessing the penalty.
 
 
 9
 7. T & S Brass did not exercise bad faith in operating its surface impoundment without a permit prior to 1985 because the company fully cooperated with South Carolina regulatory officials in their investigation of the company's impoundment, and it took the state itself until August 1985 to conclude that T & S Brass was subject to regulation as a facility for treating, storing and disposing of hazardous wastes.
 
 
 10
 8. Closure of the impoundment had proceeded on an expedited basis following determination of the lagoon's regulated status, thus demonstrating T & S Brass' good faith effort to comply with applicable regulations.
 
 
 11
 9. There was error committed in granting injunctive relief.
 
 
 12
 We have carefully reviewed the record and find it to contain substantial support for the district court's determination on each issue of fact. Furthermore, the court's findings of law are satisfactorily enunciated and correctly explained. While there was evidence that T & S Brass removed F006 sludge from its surface impoundment on or before April 24, 1984, there also was credible evidence that wastewater entering the surface impoundment caused more F006 sludge to accumulate until not merely November 8, 1985, but May 21, 1986.
 
 
 13
 It is not incumbent on us to decide whether the formation of sludge through inadvertent settling, as opposed to intentional chemical treatment, would constitute a violation of the RCRA and its accompanying regulations, because the record supports the district judge's determination that T & S Brass intentionally placed electroplating wastewater into its surface impoundment with knowledge the F006 was forming as a result. Such sludge formation was hardly inadvertent.
 
 
 14
 Evidence was clearly sufficient to establish that F006 sludge was present in the surface impoundment as of November 8, 1985. It also was abundantly clear from a reading of the record that the surface impoundment operated by T & S Brass was a land disposal facility.
 
 
 15
 The penalty imposed by the district judge was clearly not excessive. Empowered to levy a fine of up to $25,000 a day, he elected $1,000 per day as sufficient to compel compliance. His discretion was not abused. T & S Brass' attempt to rely on inability to secure insurance is not convincing, since the lack of insurance followed from T & S Brass' non-compliance with the law. T & S Brass' failure to display good faith was supported by substantial evidence. The impossibility of acquiring insurance, if it existed, did not render it impossible for T & S Brass to comply with the law. In the absence of insurance coverage, T & S Brass could have, and should have, closed its surface impoundment until it had constructed an alternative system to deal with the overflow of electroplating wastewater.
 
 
 16
 All in all, the district court sufficiently, indeed prudently and abundantly, addressed the relevant policy considerations in assessing the penalty.
 
 
 17
 We find no error in the district court's conclusion that T & S Brass failed to exercise good faith in complying with the financial responsibility requirements of the RCRA. T & S Brass cannot avoid a finding of bad faith, as it has attempted to do, by arguing that the state of South Carolina did not formally notify the company until August 1985 that it was subject to state and federal regulation as a facility for treating, storing or disposing of hazardous waste. Even if T & S Brass had not known before August 1985 that it was subject to the RCRA, the company had until November 8, 1985 to bring itself into compliance with federal regulations. Three months should have provided sufficient time to comply. Instead, T & S Brass continued its violation of the RCRA for approximately nine months, until May 21, 1986. Furthermore, there was ample evidence to conclude that T & S Brass had notice well before August 1985 that it was required to comply with the RCRA. An environmental engineer retained by T & S Brass testified at trial that he notified the company in March 1985 that its surface impoundment was subject to the RCRA and thus the company was required to meet the November 8, 1985 deadline.
 
 
 18
 In view of the events of the past and the apparent reluctance and dilatory behavior of T & S Brass in complying with the law, it was well within the district court's discretion to conclude that the mere closing of the impoundment did not of itself guarantee total future compliance by T & S Brass. The injunctive relief granted was appropriate in the circumstances.
 
 
 19
 The district court, however, made a technical error in ordering T & S Brass to comply with closure and post-closure requirements imposed by EPA regulations at 40 C.F.R. Part 264. Instead, the district court should have ordered compliance with South Carolina's parallel regulations governing closure and post-closure of hazardous waste facilities. The federal government has given South Carolina authority to operate a state regulatory scheme for hazardous wastes in lieu of the federal program. See 50 Fed.Reg. 46437 (Nov. 8, 1985); 42 U.S.C. Sec. 6926.
 
 
 20
 We hereby vacate the injunction against T & S Brass to the extent it mandated compliance with federal regulations under 40 C.F.R. Part 264 and remand the case to the district court with instructions to modify that injunction to require T & S Brass to comply with South Carolina law.
 
 
 21
 In all other respects, we adopt the careful and thorough opinion of the district court in United States v. T & S Brass and Bronze Works, Inc., 681 F.Supp. 314 (D.S.C.1988), and affirm the judgment and decree.
 
 
 22
 AFFIRMED IN PART; VACATED IN PART; AND REMANDED WITH INSTRUCTIONS..